## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

DONALD ALAN BOULDEN,

      Plaintiff,

    v.                                 No. 2:21-cv-00440 KWR/JHR

JERRY ROARK, DAVID JABLONSKI,
CECELIA HERNANDEZ,
NEW MEXICO DEPARTMENT OF CORRECTIONS,
GEO GROUP, INC.,
GEO LEA COUNTY CORRECTIONAL FACILITY,
DWAYNE SANTISTEVAN, *Warden,*
ALISHA TAFOYA LUCERO, *Secretary of Corrections,*

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Judge Jerry H. Ritter's Proposed Findings and Recommended Disposition ("PFRD"). Doc. 194. In the PFRD, Judge Ritter recommends that the Court dismiss the remaining federal constitutional claims (Counts V and X) against Defendant Jerry Roark, grant the motion for summary judgment in part (Doc. 164), and decline to exercise supplemental jurisdiction over the remaining state law claims. Doc. 194 at 27.

For the reasons stated below, the Court ADOPTS Judge Ritter's PFRD (Doc. 194); DISMISSES the remaining federal claims in this case against Defendant Roark (Counts V and X); declines to exercise supplemental jurisdiction over the remaining state law claims and REMANDS the remaining state law claims in this case to state court; and GRANTS in part the State Defendants' Motion for Summary Judgment (Doc. 164).

### BACKGROUND

### I.    <u>Plaintiff's Complaint.</u>

Plaintiff is incarcerated in the custody of the New Mexico Corrections Department.  He has pursued various law-related independent study correspondence courses through Blackstone Career Institute ("BCI"). The New Mexico Corrections Department awards good time credit for the successful completion of certain educational courses leading to a degree or certification. Plaintiff asserts various claims stemming from the alleged denial of (1) two lump sum awards of good time credits for the completion of educational courses, and (2) a prohibition on taking additional correspondence courses or receiving educational material.

In his "Amended Tort Complaint" (Doc. 40), Plaintiff asserted the following claims:

Count 1: Violation of state created liberty interest protected under the Due Process
    Clause of U.S. Const. Amend. XIV;  N.M. Const. Art. II, Sec. 18

Count II: Violation of State Created conditions of confinement, CD 121011, et seq.

Count III: Violation of State Statute 33-2-34 NMSA 1978

Count IV: Breach of state created CD 121101 et seq contract

Count V: Violation of Plaintiff's United States First Amendment Rights, and New
    Mexico Constitutional rights U.S. Const. Am. I, NM. Const. Art. II, Sec. 7.

Count VI: Prejudicial discrimination in violation of the Fourteenth Amendment; U.S.
    Const. Am. XIV, N.M. Const. Art. II, Sec. 18.

Count VII: Cruel and Unusual Punishment without penological justification

Count VIII: Violation of Equal Protection of the Laws, U.S. Const. Am. XIV, N.M.
    Const. Art. II, Sec. 18

Count IX: Violation of Separation of Powers, N.M. Const., Art III

Count X: Abridgement of constitutional rights, U.S. Const. Am. XIV

Count XI: Vicarious Liability

Count XII: Retaliation

Count V was asserted against the Secretary of Corrections, the Geo Group, and Deputy Secretary Roark. Under Count X (Fourteenth Amendment Due process), the defendants were not specified.

**II.    Order dismissing without prejudice certain federal claims pursuant to *Heck*.**

In a prior opinion, the Court adopted a prior PFRD and dismissed all federal claims which challenged the denial of good time credits.  *See* Memorandum Opinion and Order, Doc. 135.  The Court dismissed without prejudice the federal constitutional claims (Counts I, VI, VII, and VIII) challenging the deprivation of good time credits, pursuant to *Heck v. Humphrey*. Alternatively, to the extent *Heck* did not apply, all federal constitutional claims were alternatively dismissed against Defendants Tafoya Lucero and Jablonski because Plaintiff did not allege their personal involvement in the alleged constitutional violations. Count XI was dismissed as to the federal claims. Moreover, the federal constitutional claims against Defendant NMCD were dismissed, as § 1983 claims do not sound against a state entity. As to the other defendants, Plaintiff's First Amendment Claim (Count V) and Fourteenth Amendment claim (Count X) challenging the deprivation of educational material survived. Count XII was dismissed without prejudice, as Plaintiff admitted it is prospective only, i.e., no retaliation has occurred. The Court reserved ruling on the state law claims. *See* Doc. 135.

In a separate order, the Court adopted Judge Ritter's recommendation to dismiss Counts V and X as to the GEO Defendants.  Doc. 191.

**III.    Undisputed Material Facts.**

Defendants set forth their undisputed material facts ("UMF"), supported by citation to the record.  Although Plaintiff nominally disputed some UMFs, he generally did not create a genuine

dispute of material fact. For example, he generally did not (1) cite to the record disputing the asserted fact, or (2) point to an absence of support in the record for the asserted fact. Fed. R. Civ. P. 56(c) and D.N.M. LR-Civ. 56-1. The Local Rules sets forth detailed procedures requiring how a party must set forth or respond to asserted material facts. *Id.* Plaintiff did not set forth his own asserted facts as required by the local rules. *Pro se* parties are required to follow the same rules of procedure as other parties. *See Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994), *citing Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir.1994) (citing several cases for principle that *pro se* parties must comply with same procedural rules that govern all other litigants). Therefore, the Court takes Defendants' asserted facts as undisputed. Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact… the court may: (2) consider the fact undisputed for purposes of the motion.").

Moreover, Judge Ritter set forth his statement of the undisputed material facts. Plaintiff did not specifically object to the PFRD demonstrating that this recitation of the undisputed material facts was incorrect. Alternatively, the Court has also performed its own *de novo* review and agrees with Judge Ritter. Therefore, the Court adopts Judge Ritter's recitation of the undisputed material facts.

## DISCUSSION

## I. <u>Plaintiff failed to specifically object to the PFRD to preserve *de novo* review</u>.

Plaintiff filed a one-page general objection to the PFRD. *See* Plaintiff's Objection, Doc. 195. He stated that he generally objected to the PFRD, but he did not state any specific objections, or explain how the PFRD was incorrect.

He also implies that he did not write full objections due to time constraints. But he does not request an extension, show good cause for an extension, or explain why the standard time

allotted – 14 days plus 3 for mailing – was insufficient to adequately file objections. The deadline expired after March 24, 2025, but he signed and mailed his objection on March 14, 2025. The objection was docketed on March 17, 2025. *See* Doc. 195. Thus, it appears that he did not use the majority of the time allotted in the objection period.

Objections must be "both timely and specific" to be preserved for review by a district court. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996) (expressly holding that failure to file specific objections waives review by *both* the district court and appellate court). "[T]he filing of objections ... enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute," and only objections that clearly "focus the district court's attention" on the central disputes will be considered. *Id.* at 1059-1060. Further, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are also deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). Plaintiff filed a one-page general objection, but did not specifically explain why he disagreed with Judge Ritter's PFRD, or point out any specific error in the PFRD. Plaintiff generally references his arguments opposing summary judgment but does not explain or demonstrate how the PFRD is incorrect. For example, as to the First Amendment claim he does not explain how the PFRD erred in analyzing the *Turner* factors. Rather, he merely incorporates his prior arguments opposing summary judgment. *See* Doc. 195 at 1. *Pro se* parties are required to follow the same rules of procedure as other parties. *See Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994), *citing Nielsen v. Price,* 17 F.3d 1276, 1277 (10th Cir.1994) (citing several cases for principle that *pro se* parties must comply with same procedural rules that govern all other litigants). The Court therefore finds that his general objection is insufficient to preserve *de novo* review by the district court, as it does not focus the Court's attention to the

factual and legal issues that are at the heart of the dispute. Reviewing the PFRD under the appropriate standard of review, the Court ADOPTS the PFRD.

Alternatively, as explained below, only if *de novo* review were not waived and the Court were required to *sua sponte* conduct a *de novo* review of the PFRD, the Court would adopt the PFRD under *de novo* review.

## II.    The Court grants summary judgment in Defendant Roark's favor on First Amendment Claim (Count V).

Defendant Roark moved for summary judgment on the First Amendment Claim (Count V). The Court already dismissed this claim as to the GEO Group defendants and Defendants Jablonski, Tafoya Lucero, and NMCD. Therefore, the Court will limit its analysis of this claim to Defendant Roark. Judge Ritter recommended that the Court dismiss the First Amendment Claim. The Court agrees, adopts Judge Ritter's recommendation, and dismisses the First Amendment claim (Count V) as to Defendant Roark.

Plaintiff alleges that Defendants violated his First amendment rights by allegedly restricting the independent study correspondence courses he could take. But as explained below, it appears Plaintiff was not prohibited from taking his desired independent study correspondence courses, and even if he were restricted, the *Turner* factors demonstrate there was a legitimate penological interest in the policy.

In its prior opinion the Court perceived two separate bases for liability: (1) a claim for the denial of lump sum awards of good time credit for the completion of educational courses and (2) the denial of access to his desired educational courses, wholly apart from any good time issue. The Court concluded that the first was barred by *Heck*.  The second is at issue in this opinion as to Defendant Roark.

A.      **There was no delay in approving independent study correspondence courses.**

Inmates at New Mexico Corrections Department ("NMCD") may obtain good time credit by completing certain educational courses. At issue herein is whether Plaintiff was prohibited from taking certain educational courses in violation of the First Amendment. As explained below, the record does not reflect that Plaintiff was prohibited from *taking* his desired independent study courses. Any delay was attributable to denying approval for good time credits.

NMCD policy allowed inmates to obtain good time credit for the completion of educational courses which (1) lead to a degree or certification and (2) are taken at institutions accredited by the U.S. Department of Education. Doc. 164 at UMF 8. Under a prior version of the policy, "in order to qualify for LSA for earning an Associate's degree, a Bachelor's degree or Graduate degree, the education program leading to the degree or graduate qualification must either by provided by the Department or a Department contractor or subcontractor; or, the entity providing the education program must be an accredited institution and the program must be approved in advance by the Departments' Education Bureau, the Classification committee and the Warden." CD-082801(B)(3)(e), Doc. 164 at UMF 8. Mr. Clark, an employee of NMCD, learned that inmates were taking independent education correspondence courses which were not accredited by the U.S. Department of Education. Doc. 164 at UMF 6. The education department at NMCD ensured that inmates completed all proper paperwork for an independent correspondence study course when requesting good time credit, which took time to review, correspond with the correctional facility, and finalize. *Id.* at UMF 8. Defendants identified irregularities where inmates would start an independent study course, complete the course within two to five days, and request good time credit of thirty to sixty days. *Id.*

7

When Mr. Clark received improper paperwork from an inmate seeking good time credit, he was required to research the educational program to determine if it was accredited by the U.S. Department of Education, which took time if he was not familiar with the institution. *Id.,* UMF 10. Mr. Clark learned that some of these independent study courses were not accredited by the U.S. Department of Education, and it appeared that inmates were circumventing the policy for awards of good time credit by participating in independent study courses which were not accredited by the Department of Education. *Id.* at UMF 11. Defendant Roark agreed that inmates were circumventing the Defendants' policy on awards of good time credit. *Id.* at UMF 12.

On September 7, 2018, Defendant Roark issued a directive to temporarily suspend the approval of good time credit for independent study correspondence courses. *Id.* at UMF 13.

On May 28, 2019, NMCD issued a new policy. *Id.* at UMF 16, 17. The policy modified the definition of independent study course, stated that the course must be approved through committee prior to a student's enrollment, and stated that the course must be accredited through the Higher Learning Commission. It further stated that non-approved courses would not be considered for an award of good time credit. *Id.* The policy did not prevent an inmate from participating in an independent correspondence course, but does not prevent an inmate from receiving an award of good time credit if it does not meet NMCD policy. *Id.*

Plaintiff alleges that he was deprived of postsecondary published educational material from Blackstone Career Institute ("BCI"). Defendant's undisputed material facts establish that Plaintiff continuously took his desired legal courses through BCI:

- He completed his first BCI course, Introduction to Law, on November 13, 2017. Doc. 164 at 14, UMF 24.

- After the September 7, 2018 directive temporarily suspending good time credit for independent study courses, he completed seven additional courses from BCI: (1) Constitutional Law Art I, completed on September 17, 2018; (2) Constitutional Law Part II, completed on September 18, 2018; (3) Constitutional Law Part III, Completed on October 15, 2018; (4) Legal Research Part I, completed on November 5, 2018; (5) Legal Research Part II, completed on November 12, 2018; (6) Employability skills completed on December 21, 2018; (7) Ethics completed on January 7, 2019. *Id.* at UMF 25.

- On December 21, 2018, BCI sent Plaintiff a letter about its Paralegal Diploma program. *Id.* at UMF 26.

- Plaintiff received his Paralegal Studies certificate from BCI on January 9, 2019.

- Plaintiff first requested approval to take the criminal law education program from BCI on January 15, 2019. He was approved to take the course on January 25, 2019. Doc. 164, Ex. Y and GG. Plaintiff enrolled in the Criminal Law Certificate course on March 27, 2019, and completed his program on July 16, 2019. He completed the criminal law education program on July 16, 2019. *Id.* at UMF 29. Doc. 164 at UMF 30. In response to this asserted fact, Plaintiff did not argue or present any evidence that his request to take the criminal law course was denied, or the reason for such denial. *See* Doc. 173 at 10-11.

- In March 2020, BCI sent Plaintiff a letter congratulating him for completing the paralegal studies program and providing information the advanced paralegal studies courses offered by BCI. *Id.* at UMF 31.

- On November 19, 2020, Plaintiff requested approval for an Advanced Paralegal: Tort law course from BCI.  This request was approved on January 7, 2021. *Id.* at UMF 33.

- Plaintiff requested approval to take a one-year course in civil litigation on September 7, 2020. Doc. 164 at UMF 34, citing Doc. 1-2 at 108 (noting course was one year in length). He enrolled in the course on April 4, 2021, and he completed the one-year course on August 10, 2021. *Id.*  Plaintiff did not cite to anything in the record suggesting he was denied the opportunity to take the course or suggest why he was prohibited from taking the course.

- On March 3, 2022, Plaintiff was approved to take and receive credit for a Personal Injury (torts) course from BCI.  Doc. 164 at UMF 36, *citing* Doc. 164, Ex. P.

In sum, these facts submitted by Defendants demonstrate that Plaintiff continuously took his desired courses from BCI. Plaintiff has not demonstrated, by citation to the record as appropriate, that he was prohibited from taking his desired courses. To the extent Plaintiff disputes these above asserted facts, he has not cited to any evidence in the record in his response to genuinely dispute these facts.  *See* D.N.M.LR-Civ. 56-1; Fed. R. Civ. P. 56(c), (e).

Plaintiff cites to an unsigned independent course study request to dispute Defendant's undisputed material fact 33 and to assert that he was denied a request to take an Advanced Paralegal class. *See* Doc. 173 at 11, *citing* Doc. 1-2 at 108. It appears Plaintiff submitted a request in September 2020 to receive approval for credit for an Advanced Paralegal Civil Litigation course at BCI. *Id.* The form reflects that this is a 1-year program. *Id.* The record does not reflect that the request was denied, or why it was denied. The record also doesn't reflect that he was prohibited from *taking* the course. Rather, he completed this program on August 10,

2021. *Id.* Therefore, it appears his request was approved as he completed the program within one year.

Plaintiff asserts that he was prohibited from taking courses for various periods, including 954 days, 843 days, and 263 days (from September 7, 2018 to May 28, 2019). *See* Plaintiff's Response to MSJ, Doc. 173 at 10, ¶40. But as explained above, the record reflects that Plaintiff took his desired courses from BCI, and he has not cited to the record to demonstrate he was prohibited from taking his desired courses, or how long he was prevented from taking these courses.

Plaintiff submitted a grievance on October 22, 2018, requesting permission to enroll in new courses from BCI.  In response to the grievance, Defendants allowed him to continue his existing courses and allowed him to take new courses without good time credit. He requested permission to start a criminal law education program at BCI on January 15, 2019.  Plaintiff was approved to take this course on January 25, 2019. *See* Doc. 164, Exhibit GG (clarifying that Mr. Boulden was free to take the independent study course at BCI he desired even if he would not receive good time credit).  He was able to enroll in his new paralegal course on March 27, 2019 once he had enough money to pay for the independent studies course.  *See* Doc. 164 at UMF 27-30.  This period of delay occurred while NMCD was creating a new policy for independent study courses. However, Plaintiff continued to take non-correspondence courses during this period.  *Id.* at UMF 28.

In sum, the record does not reflect that Plaintiff was prevented from taking his desired courses. To the extent there was any delay in approving good time credit for these courses, it appears to have been limited to ten days during the period when NMCD was reformulating its policies on receiving credit for independent studies courses. Plaintiff's response to the motion for

summary judgment did not provide sufficient citation to the record that he was prevented from taking any independent study educational course. To the extent he asserts he was denied approval for good time credits, as explained in the Court's prior opinion, any such federal action is barred by *Heck*. Defendants did not prevent Plaintiff from taking independent-study correspondence courses at BCI. Rather, any delay appears to have been caused by Plaintiff seeking prior approval for the award of good time credit for the completion of educational courses.

To the extent Defendant continues to challenge the deprivation of good time credits for the completion of educational courses under Counts V and X, for the reasons set forth in the Court's prior opinion, the Court dismisses the portions of those claims without prejudice under *Heck*. *See* Memorandum Opinion and Order, Doc. 135.

Therefore, it appears that Plaintiff was not prohibited from *taking* his desired independent study educational courses through Blackstone. On this ground alone, Plaintiff has not demonstrated a genuine dispute of material fact, and the Court may enter summary judgment in Defendant Roark's favor as to the First Amendment claim (Count V).

**B.     Even assuming there was a delay in approving his independent study correspondence courses from BCI, any delay did not violate the First Amendment.**

Judge Ritter recommended that the temporary suspension of certain correspondence courses did not violate Plaintiff's First Amendment right. Doc. 194 at 12. The Court concludes that Plaintiff has failed to create a genuine dispute of material fact precluding the entry of summary judgment as to the First Amendment Claim against Defendant Roark. Judge Ritter recommended finding that the policy's temporary suspension of certain courses lawfully

addressed the legitimate interest of prison safety and fairness while maintaining other ways to exercise inmates' First Amendment right. Doc. 194 at 13. This recommendation was unchallenged by Plaintiff, and the Court otherwise agrees with it.

"The First Amendment prohibits laws 'abridging the freedom of speech,' which, 'as a general matter ... means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.' " *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 121, 131 S.Ct. 2343, 180 L.Ed.2d 150 (2011) (quoting *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573, 122 S.Ct. 1700, 152 L.Ed.2d 771 (2002)). "[S]entenced prisoners enjoy [this] freedom of speech"—"subject to restrictions and limitations" in light of the "considerations underlying our penal system." *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (quotation omitted). For instance, "[i]nmates have a First Amendment right to receive information while in prison to the extent the right is not inconsistent with prisoner status or the legitimate penological objectives of the prison." *Jacklovich v. Simmons,* 392 F.3d 420, 426 (10th Cir. 2004) (citations omitted). More specifically, "when a prison regulation impinges on inmates' constitutional right[ ]" to receive information, "the regulation is valid if it is *reasonably related* to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (emphasis added); *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010) (same). The "First Amendment protects a prisoner's right to receive mail." *Frazier v. Ortiz,* 417 F. App'x 768, 773 (10th Cir.2011) (citing *Thornburgh v. Abbott,* 490 U.S. 401, 407 (1989)). Moreover, "a complete ban on hardcover books or newspapers would likely violate the First Amendment." *Khan v. Barela*, 808 F. App'x 602, 608 (10th Cir. 2020).

A district court typically must analyze the challenged regulation under the four-part test established by the Supreme Court in *Turner. Jacklovich,* 392 F.3d at 426. The analysis requires

an examination of the following *Turner* factors: "(1) whether a valid and rational connection exists between the regulation and the asserted legitimate governmental interest; (2) whether alternative means of exercising the constitutional right remain available to inmates; (3) any effect accommodating the right would have on guards, inmates, and the allocation of prison resources; and (4) the absence of ready alternatives." *Id.; Jones v. Salt Lake County,* 503 F.3d 1147, 1153–54 (10th Cir.2007); *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). In weighing the First Amendment interests against the deference afforded corrections officials, the reasonableness of the regulations and policies matters. *Thornburgh v. Abbott,* 490 U.S. 401, 414, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). *Turner* establishes that "restrictive prison regulations [including restrictions on First Amendment rights] are permissible if they are reasonably related to legitimate penological interests and are not an exaggerated response to such objectives." *Beard v. Banks,* 548 U.S. 521, 528, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006) (citation and quotations omitted).

First *Turner* factor. Judge Ritter found that the policy satisfies the first *Turner* factor became Defendants had a legitimate, neutral objective of ensuring that inmates lawfully complete their sentences. Plaintiff admitted that there was a penological justification for the directive, but asserts that the length of delay was not reasonable.  As explained above, there was no such delay. Plaintiff was approved for his law program at BCI within ten days of seeking approval. Judge Ritter found that neutrality was shown because the "temporary suspension pending review and revision to the policy affected all independent correspondence course." Doc. 164 at 25, *quoted* in PFRD, Doc. 194 at 14. Although Plaintiff stated the temporary suspension affected religious courses, he was not participating in any religious courses. *Id.* This policy

applied to all independent study correspondence courses, and therefore it is neutral on its face. *Id.*

Next, Judge Ritter found that the policy had a legitimate objective. NMCD temporarily instituted the policy so that inmates could not reduce their sentences by accruing good time through courses from unaccredited institutions unapproved by NMCD. Defendants asserted that researching whether the courses were from accredited providers burdened staff. This temporary suspension until a new policy could be formulated furthered the legitimate goal of maintaining fairness and order by ensuring all inmates served their lawfully imposed incarceration terms. Moreover, the new policy ensured that prison resources were used efficiently. The policy further attempted to prevent inmates from receiving good time credit for unapproved or unaccredited classes, which furthers penological interests. Plaintiff in his response did not dispute that there was a valid penological interest to the policy, but asserted that the delay was too long. As explained above, Plaintiff was not prevented from taking his independent study courses. Plaintiff has not demonstrated that he was temporarily delayed, or for how long he was prevented from taking his desired courses.

In sum, the Court agrees with Judge Ritter, finds the first *Turner* factor weighs in Defendants' favor, and concludes there was a valid and rational connection between the regulation and the asserted legitimate governmental interest.

Second *Turner* factor. Judge Ritter next found that the policy satisfied the second *Turner* factor because inmates had alternative means of exercising their First Amendment right to educational material. He reasoned that Plaintiff was not prohibited from engaging in all forms of post-secondary education, and the directive only applied to a limited category of independent study correspondence courses. Moreover, the directive did not appear to prohibit Plaintiff from

participating in educational courses, but merely prohibited him from receiving good time credits for courses from unaccredited providers. Doc. 164 at UMF 17, 18. Moreover, Plaintiff participated in his desired independent study educational courses continuously. Plaintiff did not object to Judge Ritter's finding or explain why it is incorrect. The Court agrees with Judge Ritter that Plaintiff had alternative means of exercising his First Amendment right. As explained above, Plaintiff had access to his desired legal educational programs. Even assuming he did not, Plaintiff had access to alternative educational courses.

Third *Turner* factor. Judge Ritter found that the policy satisfied the third *Turner* factor because accommodating Plaintiff's preferred educational course would undermine prison operations and burden prison resources. *See* Doc. 194 at 16-17. Defendants explained the burden researching accreditation placed on NMCD staff and the allocation of prison resources generally. Doc. 164 at UMF 10, 11, 19. Plaintiff did not object to the Judge Ritter's PFRD to explain why this finding was incorrect. The Court agrees with Judge Ritter and concludes that the third *Turner* factor favors the Defendants

Fourth *Turner* factor. Finally, the fourth *Turner* factor considers the absence of ready alternatives as evidence of the reasonableness of prison regulations. Judge Ritter recommended that the policy satisfies the fourth *Turner* factor, because there is no apparent, workable alternative to accommodate Plaintiff. It does not appear that Plaintiff was prohibited from taking new independent study correspondence courses. Rather, approval for good time credit for new courses was suspended pending the formulation of a new policy. The policy provided a reasonable solution to stop inmates' abuse of taking independent study correspondence courses for the award of good time credit. The temporary suspension did not prohibit enrollment in

independent study courses without seeking an award of good time credit. Plaintiff did not provide reasonable alternatives.

In sum, the *Turner* factors clearly demonstrate that the challenged regulation and temporary pause was rationally related to a legitimate governmental interest.

**III.    Fourteenth Amendment Claim (Count X).**

Plaintiff also alleged that the suspension of educational material violated his rights under the Fourteenth Amendment. *See* Amended Complaint, Doc. 40 at ¶¶ 26, 49, 50. Judge Ritter recommended granting summary judgment as to the Fourteenth Amendment claim. Judge Ritter found that Plaintiff's desired vocational training is not a constitutional right, and that the limitations placed on educational services in this case does not violate a constitutional right. *Robinson,* 982 F.2d at 429. Alternatively, he found that Plaintiff was given due process and allowed to enroll in his desired classes.

Plaintiff did not specifically object to these conclusions and has therefore waived *de novo* review. Under the appropriate standard of review, the Court finds Judge Ritter's recommendations well-taken and they are therefore adopted. Alternatively, even assuming *de novo* review were not waived, the Court adopts Judge Ritter's recommendation.

The Tenth Circuit has held that a prisoner has a liberty interest under the Fourteenth Amendment in correspondence and publications in the mail. *Treff v. Galetka*, 74 F.3d 191, 194–95 (10th Cir. 1996); *Jacklovich v. Simmons*, 392 F.3d 420, 433 (10th Cir. 2004) (noting liberty interest in correspondence and noting that inmates have right to procedural due process when publications are rejected). "Correspondence between a prisoner and an outsider implicates the guarantee of freedom of speech under the First Amendment and a qualified liberty interest under the Fourteenth Amendment." *Treff v. Galetka,* 74 F.3d 191, 194 (10th Cir.1996).

Here, Plaintiff received his desired educational material.  It does not appear there were any limitations placed on *taking* independent study educational courses, only receiving good time credit for them.

Therefore, the Court grants summary judgment in favor of Defendant Roark.

**IV.**    **State Defendants Tafoya Lucero, Jablonski, and NMCD.**

The Court already dismissed all federal claims against Defendants Tafoya Lucero, Jablonski, and NMCD in a prior opinion.  Alternatively, the Court would dismiss Counts V and X against these defendants for the same reasons as above.

**V.**    **Plaintiff failed to carry his burden to show that the right at issue was clearly established.**

Defendant Roark moved for qualified immunity. Judge Ritter recommended finding that Defendant Roark is entitled to qualified immunity. Judge Ritter noted that Plaintiff's pleadings and responses did not cite to on-point, controlling authority establishing a civil rights violation from these facts. Plaintiff did not object to this recommendation.

When a Defendant moves for qualified immunity, the burden shifts to the Plaintiff demonstrate that the right at issue was clearly established at the time of the defendant's alleged unlawful conduct.  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Here, Plaintiff failed to cite to case law showing that the right at issue was clearly established.  *See* Response, Doc. 173 at 33. The Court cannot act as his attorney and carry this burden for him. *See, e.g., Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (as to *pro se* litigant, Tenth Circuit stated "we cannot fill the void by crafting arguments and performing the necessary legal research."); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("we do not believe it is the

proper function of the district court to assume the role of advocate for the pro se litigant.").
Therefore, Defendant Roark is also entitled to qualified immunity.

**VI.**     **Court declines to exercise supplemental jurisdiction over the remaining state law**
**claims.**

Judge Ritter recommended that the Court decline to exercise supplemental jurisdiction
over the remaining state law claims, as all claims over which the Court has subject matter
jurisdiction have been dismissed.  Because no party has objected, the Court need not review
Judge Ritter's decision *de novo*.  Under the appropriate standard of review the Court finds Judge
Ritter's recommendation well taken and will remand the remaining state law claims to state
court.

This case was removed to this court on the basis of federal question jurisdiction. The
Court dismissed all federal claims in this case.  No party has asserted that the Court has diversity
jurisdiction over this case at any point. *See, e.g.,* Notice of Removal, Doc. 1 (only mentioning
federal question jurisdiction).

Because all claims over which the Court has original jurisdiction have been dismissed,
the Court declines to exercise supplemental jurisdiction over the remaining state law claims,
pursuant to 28 U.S.C. § 1367(c)(3). "When all federal claims have been dismissed, the court
may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch
v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel.
Enid City Comm'n*, 149 F.3d at 1156). That conclusion is consistent with the Supreme Court's
statement that:

> [n]eedless decisions of state law should be avoided both as a matter of comity and
> to promote justice between the parties, by procuring for them a surer-footed
> reading of applicable law. Certainly, if the federal claims are dismissed before

> trial, even though not insubstantial in a jurisdictional sense, the state claims
> should be dismissed as well.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130 (footnote omitted). Here, the Court has dismissed all claims over which it has original jurisdiction. The Court finds it appropriate to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). The Court will remand the remaining state law claims to state court.

## CONCLUSION

The Court adopts Judge Ritter's PFRD (Doc. 194). To the extent Defendant continues to challenge the deprivation of good time credit for the completion of educational courses under Counts V and X, for the reasons set forth in the Court's prior opinion, the Court dismisses those portions of those claims without prejudice under *Heck*. *See* Memorandum Opinion and Order, Doc. 135. The Court dismisses with prejudice the remaining portions of the federal constitutional claims under Count V and X challenging the deprivation of educational material against Defendant Roark. The federal claims have already been dismissed against the other State Defendants, including Defendants Tafoya Lucero, Jablonski, and NMCD. Moreover, the Court declines to exercise supplemental jurisdiction over the remaining state law claims, and remands those claims to state court.

**IT IS THEREFORE ORDERED** that Judge Ritter's Proposed Findings and Recommended Disposition **(Doc. 194)** are **ADOPTED.**

**IT IS FURTHER ORDERED** the State Defendants' Motion for Summary Judgment (Doc. 164) is **GRANTED IN PART.**

**IT IS FURTHER ORDERED** that the remaining portions of the federal constitutional claims under Count V (First Amendment) and Count X (Fourteenth Amendment) are dismissed.

To the extent portions of those claims challenge the deprivation of good time credits, they are dismissed without prejudice under *Heck v. Humphrey*. No federal claims remain in this case.

**IT IS FURTHER ORDERED** that the Court declines to exercise supplemental jurisdiction over the remaining state law claims in this case, and remands those claims to the County of Lea, Fifth Judicial District Court, State of New Mexico. The Clerk of Court is directed to take the necessary action to remand this case.

\_\_\_\_\_/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE